# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| LARRY LEE JACKS, | No. ED CV 20-628-JFW (PLA) |
| Petitioner, | **ORDER ACCEPTING FINDINGS, CONCLUSIONS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |
| v. | |
| LYNCH, Warden, | |
| Respondents. | |

On July 10, 2020, the United States Magistrate Judge issued a Report and Recommendation ("R&R"), recommending that the Petition be dismissed on the merits with prejudice. (ECF No. 13). That same day, petitioner filed a document entitled "Reply Continued from Respondent's Answer." (ECF No. 15). On August 13, 2020, petitioner filed three additional documents: a "Reply" (ECF No. 18); a "Supplementary Motion Newly Discovered Evidence . . ." (ECF No. 19); and a "Recommendation Objection . . . " (ECF No. 20). Petitioner also submitted copies of mental health records from his periods of incarceration during the time frame 2002 to 2020. (ECF No. 21). The Court construes these filings (i.e., ECF Nos. 15, 18-20, and the mental health records) collectively as petitioner's Objections to the R&R.

Petitioner in his Objections argues that the recently submitted mental health records validate the opinion of the psychiatric expert, Michael E. Kania, Ph.D., that petitioner was

experiencing psychiatric symptoms that rendered him incompetent to stand trial. Petitioner asserts that, as a result, the trial court's decision to reject Dr. Kania's opinion and find petitioner competent was improper. Petitioner further argues that, based on the evidence of his mental health problems, his trial attorney was constitutionally ineffective under Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for not declaring a doubt as to his competency. Following a review of the pertinent filings, the Court concludes that petitioner's arguments lack merit.

The records before the Court detailing petitioner's mental health treatment while he was incarcerated are voluminous and span the following periods: from March 2002 to June 2009, and from August 2017 to July 2020. No records were submitted for the seven-year period from July 2010 to July 2017. As such, there are no documents reflecting petitioner's mental state at the time of his trial in June 2016. Nevertheless, the available records demonstrate that during his many years of incarceration and psychiatric treatment, petitioner primarily suffered from major depression with psychotic features, and that the symptoms he experienced were not severe enough to impair his ability to have rational thought processes or prevent him from being able to communicate logically and effectively with others.

Petitioner's psychiatric records describe him as having "a long history of depression and psychosis, with typical [symptoms] including depressed mood, lethargy, impaired motivation, occasional sleep and appetite disturbance, and mood-congruent auditory hallucinations." (See Progress Note dated 6/1/19). During his terms of incarceration, petitioner was placed in the Correctional Clinical Case Management System,[1] and at times was moved to the Enhanced

---

[1] The Correctional Clinical Case Management System ("CCCMS") level of care "is for inmates whose symptoms are under control or in partial remission and can function in the general prison population, administrative segregation, or segregated housing units." Coleman v. Schwarzenegger, 922 F.Supp.2d 882, 903 n.24 (E.D. Cal. 2009). CCCMS is the lowest level of care for mentally ill inmates. See Steward v. Sherman, 2016 WL 3345308, at *3 (N.D. Cal. June 16, 2016) (under the CCCMS level of care, inmates live in the general population while they receive medication and other treatment).

Outpatient Program,[2] while he received mental health treatment, including psychotropic medications, to manage his symptoms. (See 4/18/07 Mental Health Treatment Plan; 9/18/07 Mental Health Placement Chrono; 10/23/08 Mental Health Placement form; 11/20/08 Mental Health Placement form).

With respect to petitioner's claim that he was incompetent to stand trial, the Court notes that Dr. Kania opined in his February 20, 2017, evaluation of petitioner that, "based upon the history of symptoms described [by petitioner] and treatment received, . . . [petitioner] suffers chronically from a schizophrenic disorder with strong paranoid features." (ECF No. 8-14 at 158). Dr. Kania further opined that based on "the probation officer's report and the partial transcript of [petitioner's] behavior in court, as well as [post-trial defense counsel's] summary of his case, . . . [petitioner] was (more likely than not) not trial competent at the time of his trial in June 2016. It appears that he was able to recognize that he was not thinking clearly and that he could not make sense of events occurring around him (i.e., his trial)." (Id. at 160). In determining that petitioner had paranoid schizophrenia, Dr. Kania relied exclusively on petitioner's self report that he had been treated for schizophrenia since 1992 (id. at 156); Dr. Kania did not review any medical documentation to confirm the diagnosis. Had such a review been conducted, it would have shown that schizophrenia is only briefly referenced in the extensive records detailing petitioner's continual mental health treatment. For example, it was noted in September 2003 that petitioner was "schizophrenic." (ECF No. 19-1 at 29). Several months later, in December 2003, petitioner was assessed as having "schizophrenia, para[noid] type." (Id. at 9). A suicide risk evaluation form dated August 7, 2004, noted that petitioner had a history of mental illness involving "psychosis/schizophrenia." An accompanying progress note stated, however, that while petitioner "carrie[d] a psychotic [diagnosis]," he exhibited no signs of delusions or of a thought disorder, and his symptoms were more consistent with a major depressive episode. (See 8/7/04 Suicide Risk

---

[2] The Enhanced Outpatient Program ("EOP") "is designed to be a short-term program for inmates that need a structured clinical program with separate housing. The goal of the Enhanced Outpatient Program is to provide focused evaluation and treatment, and return the inmate-patient to a mental state where he is able to function in the general prison population." Williams v. Kernan, 2009 WL 2905760, at *1 (E.D. Cal. Sept. 4, 2009) (citations omitted).

Evaluation form; 8/7/04 Progress Note). The next reference to schizophrenia is contained in a mental health treatment plan dated May 24, 2005, in which Schizoaffective Disorder was listed as petitioner's diagnosis. (See 5/24/05 Mental Health Treatment Plan). Over three years later, in a mental health assessment update dated September 10, 2008, "schizophrenia, paranoid type" was stated as petitioner's diagnosis. (See 9/10/08 Mental Health Assessment Update from CSP-Corcoran). A mental health evaluation dated January 22, 2009, indicated a diagnosis of schizoaffective disorder by history, but noted that petitioner was not experiencing any symptoms. (1/22/09 Brief Mental Health Evaluation).

In light of the multitude of psychiatric records that were generated during petitioner's years of incarceration, the references to schizophrenia are too brief and infrequent to establish that petitioner likely was experiencing severe symptoms of paranoid schizophrenia at the time of his trial. In contrast, during 2002 to 2009, and 2017 to 2020, petitioner was repeatedly diagnosed with Major Depressive Disorder ("MDD") with psychotic features. On a less frequent basis, he was also given diagnoses of, inter alia, panic disorder and anxiety disorder. The Court finds that, taking into account the volume of records supporting the MDD diagnosis alone, along with the minimal documentation reflecting a diagnosis of schizophrenia, there is little to no evidence showing that petitioner was being treated for, or was exhibiting symptoms of, schizophrenia on any consistent or frequent basis during those time periods. (See, e.g., March 2002 Mental Health Treatment Plan (ECF No. 19-2 at 34); 12/8/03 Progress Note (ECF No. 19-1 at 14); 11/10/03 and 12/8/03 Progress Notes (ECF No. 19-1 at 14-15); 12/30/04 Mental Health Treatment Plan; 4/14/06 Mental Health Treatment Plan; 4/4/07 Progress Note; 4/18/07 Mental Health Treatment Plan; 6/5/07 Mental Health Treatment Plan; 9/18/07 Mental Health Summary; 9/22/08 Progress Note; 9/29/08 Progress Note; 10/6/08 Progress Note; 10/23/08 Parole Plan Form; 10/27/08 Progress Note; 6/19/09 Mental Health Evaluation; 8/24/17 Progress Note; 1/8/19 Progress Note; 1/27/20 Progress Note). Indeed, petitioner's mental health records from August 2017 to July 2020 documenting his treatment after he began serving his current prison sentence, consistently list MDD as petitioner's "active" mental health problem, and contain no diagnosis of schizophrenia. Accordingly, as the records do not support Dr. Kania's opinion that petitioner suffered from chronic schizophrenia that

caused severe symptoms rendering him incompetent, petitioner has not shown that the trial court's rejection of Dr. Kania's competency opinion was unreasonable.

      Next, petitioner contends in his Objections that, at the time of his trial, he was experiencing "a psychotic break" as a result of not taking his medications. (See ECF No. 20 at 8). Although petitioner has not produced any mental health records from the time he was incarcerated in the San Bernardino County Jail in connection with his June 2016 trial and July 2017 sentencing, petitioner's psychiatric records from North Kern State Prison during 2017 shed some light on the issue of petitioner's psychiatric treatment while he was in the county jail. In particular, a progress note dated August 17, 2017, described petitioner as "a new arrival . . . from [the] San Bernardino County Jail," and stated that, while he was in the jail, he was prescribed medications for "anxiety, hearing voices, and seeing things." Petitioner reported that he had been compliant with his medications at the jail and requested to continue the same medications at the prison. (See 8/17/17 Progress Note). Petitioner was subsequently diagnosed with "Major depressive disorder, recurrent, severe, with psychotic features." (See 8/23/17, 8/24/17 Progress Notes). As shown, the limited psychiatric records that touch upon petitioner's treatment while in the county jail do not support petitioner's allegations that he experienced severe psychotic symptoms after going off his medications. Rather, the records indicate that petitioner did in fact receive medication for his psychiatric symptoms while he was housed in the jail. Moreover, the Court notes that, in the records from 2017 to 2020, there is no mention in petitioner's psychiatric history that he at any time experienced a "psychotic break." Accordingly, the Court concludes that, aside from petitioner's self-serving statements, his allegation that he experienced a "psychotic break" that rendered him incompetent has no support in the record.

      The Court further observes that, while petitioner's mental health records reflect he was hospitalized at various times as suicidal, and that he attempted suicide on three occasions (in 1994, 2012, and 2015 (see 8/23/17 Suicide Risk and Self-Harm Evaluation)), there are numerous comments in his treatment records that cast doubt on the veracity of petitioner's suicidal episodes. For example, in March 2004, petitioner admitted feigning being suicidal "to get better medical care." (3/16/04 Progress Note). In August 2004, when petitioner was seen in the ER for claims

of suicidal ideation, he stated during his examination that he was told by a doctor to lie about being suicidal if he "wanted to talk to somebody." (8/23/04 Progress Note). According to a progress note dated March 14, 2006, petitioner described himself as "a con man w[ith] a gift for convincing people to do things," and that he had the ability to manipulate others. (3/14/06 Progress Note). In April 2006, it was noted that petitioner had likely exaggerated some of his mental health symptoms, and had "attempt[ed] to manipulate psych staff to get [a] single cell." (4/14/06 Mental Health Treatment Plan). A mental health treatment plan dated April 18, 2007, indicated that although petitioner appeared stable and without apparent symptoms during the previous year, he nevertheless had frequent visits to the Mental Health Outpatient Housing Unit ("MOHU") for suicidal ideation. It was noted that petitioner used "manipulation to get [his] needs met," including the "use of MOHU inappropriately." (See 4/18/07 Mental Health Treatment Plan). A progress note dated September 20, 2007, indicated petitioner was "high functioning," and while he claimed to be suicidal, he was really "more scared" of being transferred out of the EOP level of care. (See 9/20/07 Progress Note). Progress notes from October and December 2007 commented that petitioner had pretended to be suicidal, or otherwise feigned or exaggerated symptoms, for secondary gain. (See 10/24/07 Mental Health Treatment Plan; 12/13/07 Mental Health Summary). Years later, in October 2018, it was noted in a mental health assessment that petitioner showed no signs of psychosis, and he was possibly embellishing his reports of visual hallucinations. (See 10/24/18 MHMD Initial Assessment). A progress note dated January 17, 2019, described how petitioner displayed logical and linear thought processes with no signs of psychotic symptoms, but reported feeling depressed and angry because he was still waiting to receive his legal property from prison authorities. Petitioner stated he was "maintaining" but "was close to his breaking point," and responded "maybe" when asked about having homicidal ideation. These comments were interpreted as "subtle threats for secondary gain, namely getting the attention of custody to expedite the receipt of his property." (See 1/17/19 Progress Note). The Court finds that the foregoing reports documenting petitioner's history of lying and manipulation for secondary gain serve to bolster the trial court's finding that petitioner's statements during trial expressing confusion about aspects of the trial process were not credible. Likewise, this evidence is

consistent with trial counsel's belief that petitioner refused to be present during his trial in an attempt to manipulate the verdict by avoiding being identified by the jury, and not because petitioner was unable to understand the nature of the trial process.

Overall, while petitioner has established that he suffers from long term mental health problems, he has not demonstrated that he was experiencing any psychiatric symptoms that rendered him incompetent to stand trial by impairing his ability to understand the nature of the proceedings, or his ability to consult with his counsel about his defense. See Indiana v. Edwards, 554 U.S. 164, 170, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008). Although the psychiatric records document numerous instances when petitioner experienced symptoms of depression and anxiety and reported hearing voices, there is no indication that he was unable to comprehend reality. Rather, the records reflect that petitioner, despite his symptoms, was able to understand his situation and communicate rationally with mental health staff about his condition and treatment. Accordingly, the Court concludes that the mental health records do not amount to clear and convincing evidence that overcomes the trial court's competency determination. See 28 U.S.C. § 2254(e)(1). In turn, petitioner also fails to show that his counsel provided ineffective assistance for not declaring a doubt as to competency.

The Court finds that petitioner's remaining objections and arguments are adequately addressed in the R&R.[3]

## CONCLUSION

Based on the foregoing and pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, the other records on file records herein, the Magistrate Judge's Report and Recommendation, and petitioner's Objections to the Report and Recommendation. The Court has

---

[3] The Court notes that in petitioner's "Supplementary Motion Newly Discovered Evidence" (ECF No. 19), he requests an evidentiary hearing as well as the appointment of a psychiatric expert. Petitioner's requests are **denied**. An evidentiary hearing is not required on issues that can be resolved -- as they were here -- by reference to the record. See, e.g., Totten v. Merkle, 137 F.3d 1172, 1175-76 (9th Cir. 1998). Moreover, given that an evidentiary hearing is not required, the appointment of a psychiatric expert would be futile.

engaged in a de novo review of those portions of the Report and Recommendation to which objections have been made.  The Court concurs with and accepts the findings and conclusions of the Magistrate Judge.

ACCORDINGLY, IT IS ORDERED:

1. The Report and Recommendation is accepted.
2. Judgment shall be entered consistent with this Order.
3. The clerk shall serve this Order and the Judgment on all counsel or parties of record.

DATED: September 1, 2020

HONORABLE JOHN F. WALTER
UNITED STATES DISTRICT JUDGE